IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EARTH SCIENCE PRODUCTS CORP,  )
an Oregon Corporation,  )
  )
       Plaintiff,  )   TC-MD 160012N
  )
    v.  )
  )
CLACKAMAS COUNTY ASSESSOR,  )
  )
       Defendant.  )   **FINAL DECISION**[1]

Plaintiff appeals Defendant's notice dated July 24, 2013, disqualifying property identified as Account 00835350 (subject property) from farm use special assessment for the 2013-14 tax year. A trial was held on July 20, 2016, in the Jill A. Tanner Mediation Center at the Oregon Tax Court, in Salem, Oregon. Jeffrey Jensen, an Oregon attorney, appeared on behalf of Plaintiff. Plaintiff did not call any witnesses to testify at trial. Tony Hunter (Hunter), Senior Appraiser, appeared and testified on behalf of Defendant. Lynn Longfellow (Longfellow), an employee of Defendant, also testified on behalf of Defendant. Plaintiff's Exhibits 1 through 21 and 23 through 37 were received without objection. Plaintiff's Exhibit 22 was excluded as irrelevant. Defendant's Exhibits A through C and F were received without objection. Defendant's Exhibit G was admitted over Plaintiff's objection to its relevance. Defendant's Exhibits D and E were excluded as irrelevant.

In its Complaint, Plaintiff appealed the "2013, 2014 and 2015" tax years. (Compl at 1.) Defendant moved to dismiss Plaintiff's Complaint because it was "filed well past the 90 day appeal deadline for appealing the disqualification notice as per ORS 305.275 and ORS 305.280.

---

[1] This Final Decision incorporates without change the court's Decision, entered November 21, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

The complaint is also well past one year after the disqualification." (Def's Ans and Mot to Dismiss at 1.) Following a briefing on Defendant's motion to dismiss, the court issued an Order on May 27, 2016, granting Defendant's motion in part and denying it in part. The court dismissed Plaintiff's appeal for the 2014-15 and 2015-16 tax years because Plaintiff failed to present any evidence of "good and sufficient cause" under ORS 305.288(3) pertaining to those tax years. The court allowed the 2013-14 tax year appeal to proceed because the court found Plaintiff had established "good and sufficient cause" for its failure to pursue its statutory right of appeal for that tax year. The May 27, 2016, Order is hereby incorporated in this Decision.

In its May 27, 2016, Order, the court instructed the parties to propose mutually convenient trial dates. The parties proposed three dates, including July 20, 2016, and the court scheduled trial on that date. (Ptf's Ltr, Jun 15, 2016; Order Jun 16, 2016.) On July 14, 2016, Plaintiff filed its Motion for Summary Judgment (Motion) arguing that Defendant failed to follow the required procedures before disqualifying the subject property from special assessment. On July 11, 2016, Defendant filed its Response in Opposition to Summary Judgment (Response).[2] At trial, the court noted that Plaintiff's Motion was not filed at least 60 days before trial as required by TCR 47 C.[3] The court will treat Plaintiff's Motion and Defendant's Response as pre-trial briefs.

Defendant attached a Declaration signed by Hunter (Declaration of Hunter) to its Response. Plaintiff objected to that Declaration arguing that the statements were not supported by written evidence. Because Hunter testified at trial regarding the statements in his Declaration

///

---

[2] Defendant's Response was filed before Plaintiff's Motion because Plaintiff's first attempt to electronically file its Motion was unsuccessful.

[3] Tax Court Rule.

and Plaintiff had the opportunity to cross examine Hunter about those statements, the court will consider Plaintiff's objection in determining the weight to be given to Hunter's testimony.

## I. STATEMENT OF FACTS

The subject property was used in the past as a nursery and received farm use special assessment based on that activity. (Decl of Hunter at 1; *see also* Def's Resp at 1.) During Defendant's "cyclical review of exclusive farm use properties" one of its appraisers "observed that there was no sign of farm activity on the subject property." (Def's Arg at 1.)

Hunter testified that, at some point in 2012 or 2013, he called Plaintiff and spoke with a woman who he assumed was Plaintiff's office manager and also the mother of Plaintiff's president, Shane Kennedy (Kennedy).[4] He testified that he asked to speak with Kennedy, but never received a call back. A document entitled "2011-2012 Special Assessed EFU Project" includes a record regarding the subject property that states "9/10/12 called-they are manuf soil amenities-not farming ld- Shane is to call back;2/13/13 SHANE NEVER RETURNED CALL-GOING TO SEND LETTER PER TH 6/26/13." (Ptf's Ex 30; Decl of Hunter at Ex D.) Hunter wrote in his declaration that either he or another appraiser, Laura Ommert (Ommert),[5] tried to contact Kennedy at least three additional times prior to February 13, 2013. (Decl of Hunter at 2.) Hunter testified that he has no written record of those other phone calls to Kennedy.

Hunter wrote in his declaration that Ommert inspected the subject property on October 10, 2012. (Decl of Hunter at 2.) He provided an exhibit that he described as "a true copy of the Assessor's Declass Log printout showing the date of the initial inspection." (Decl of Hunter at 2, Ex D; *see also* Ptf's Ex 30.) That document states "10/20/12 LEFT NOTICE

---

[4] The roles of Kennedy and his mother are discussed in the court's Order, entered May 27, 2016.

[5] Hunter testified that Ommert retired recently.

AURORA." (*Id.*) Plaintiff noted that October 20, 2012, was a weekend. (*See* Ptf's Ex 31.) Longfellow testified that the date of October 20, 2012, on that record appeared to be a typographical error and should have been reported as October 10 or 11 like the other properties on the record. (*See* Decl of Hunter, Ex D.)

Hunter wrote in his Declaration that, between January 1, 2013, and June 27, 2013, he "conducted several site inspections from outside the fence, and left several notices on the gate, as well as reviewing aerial photographs for signs of farming." (Decl of Hunter at 2.) No written record or other evidence of those inspections was provided. Hunter testified that he did not have too many written records because he was busy and doing things on the fly. He testified he remembered seeing a no trespassing sign at the subject property, but did not remember if there was another sign identifying Plaintiff. Longfellow testified that Defendant's policy with respect to Exclusive Farm Use (EFU) properties is to ensure taxpayer compliance with the special assessment program and to keep taxpayers in the program. She testified that the appraiser who visited the subject property would have left a door hanger indicating the purpose of the visit.

Defendant ultimately concluded that the subject property did not qualify for farm use special assessment under ORS 308.062A because "[t]he primary use of the [subject] property in 2012 and 2013 was for the manufacturing of chemical soil supplements[,]" which it determined "does not qualify as farm use." (Def's Arg at 1.) Defendant sent a letter to Plaintiff on June 27, 2013, entitled "notice of intent to disqualify" the subject property from EFU. (Def's Ex A; Ptf's Ex 6.) The letter stated, in part:

> "An inspection of your farmland was recently conducted as part of our on-going countywide inventory. We were unable to observe any continuing farm activity and must now consider disqualifying these acres from farm deferred status. If you feel our decision and observation is incorrect and you wish to present evidence as to why your property should not be removed from farm deferral status, please contact our office within 30 days of the date on this letter."

(*Id.*)  The letter listed Hunter and Ommert as contacts.  (*Id.*)  Hunter testified that the June 27, 2013, letter to Plaintiff was Defendant's effort to request the recent history of the subject property's use.  After receiving no response to its June 27, 2013, letter, Defendant sent a notice disqualifying the subject property on July 24, 2013.[6]  (Decl of Hunter, Ex B.)  Defendant received no response from Kennedy until October 2014.  (Def's Ex C.)

Plaintiff's trial exhibits consisted primarily of documents produced by Defendant pursuant to Plaintiff's public records request.  (Ptf's Mot for Summ J at 2.)  Plaintiff also provided print outs of advertising for his soil amendments, a publication from the Department of Agriculture listing different fertilizers, and part of the Wikipedia page on horticulture.  (Ptf's Exs 32-37.)  Plaintiff did not present any testimony regarding the use of the subject property.

## II.  ANALYSIS

The first issue is whether Defendant complied with OAR 150-308-1100(1)[7] prior to disqualifying the subject property from EFU special assessment for the 2013-14 tax year.  If the first issue is resolved in favor of Plaintiff, then the disqualification is invalid.  If the first issue is resolved in favor of Defendant, then the second issue is whether the subject property qualified for farm use special assessment under ORS 308A.062(1) for the 2013-14 tax year.[8]

As the party seeking affirmative relief, Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence.  ORS 305.427.  "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

---

[6] Although Defendant gave Plaintiff 30 days to respond to its June 27, 2013, letter with evidence of farm use, Defendant failed to wait 30 days before issuing its notice of disqualification on July 24, 2013.

[7] OAR 150-308-1100 was formerly numbered OAR 150-308A.113.

[8] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

A.      *Compliance with Disqualification Procedures Under OAR 150-308-1100(1)*

Under OAR 150-308-1100(1), county assessors must follow certain steps to disqualify property in the EFU zone from farm use special assessment "due to discovery by the assessor that the land is no longer being devoted to a farm use[.]"  Before disqualifying property, the assessor must: "(A) Make a reasonable effort to contact the owner, owner's agent or person using the land; (B) Make a site inspection of the property; and (C) Request the recent history of the property's use."  OAR 150-308-1100(1)(a).  In addition,

> "The assessor must make a record of the inspection that includes when the inspection was made, who made the inspection, copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of the conditions found.  Notations about the conditions found may include the farm uses being made of the property, areas having no apparent farm use, vegetation on the property and its condition, whether the property is fenced and the fence's condition, and other conditions of the property that indicate a farm use or lack of farm use.  The record of inspection must be retained in the assessor's office for at least three years."

OAR 150-308-1100(1)(b).

This court has previously reviewed the rulemaking record for OAR 150-308-1100 and found that the Department of Revenue "had two purposes in adopting the inspection and record-keeping requirements of OAR 150-308-1100: (1) to ensure that a given property is, in fact, no longer entitled to EFU special assessment and (2) to ensure that a disqualification will be upheld should a taxpayer choose to challenge it."  *Boardman Tree Farm v. Morrow County Assessor*, 20 OTR 361, 368 (2011).

1.      *Whether a reasonable effort was made to contact Plaintiff*

The documentary evidence provided reveals that Defendant's appraisers telephoned Plaintiff on September 10, 2012, and requested a call back from Kennedy.  Hunter testified that he and Ommert attempted to contact Kennedy at least three additional times before February 13,

2013, but nothing in Defendant's written records corroborate that testimony. Plaintiff argued at trial that the court should rely only upon Defendant's written records, not on Hunter's testimony that is not supported by written records. Where, as here, the rule requires Defendant to maintain written records of its "means of contact[ing]" Plaintiff, the court agrees with Plaintiff. Thus, the court finds that Defendant made one attempt to contact Plaintiff by telephone. One telephone call is not much, but the court finds it is sufficient, assuming Defendant complied with the other requirements in the rule.

2.    *Whether a site inspection was made of the subject property*

"OAR 150-308[-1100](1)(a)(B) does not prescribe any specific form of inspection." *Boardman*, 20 OTR at 369. The court in *Boardman* concluded that "the assessor's frequent observations of the subject property, or of portions thereof, from adjacent roadways satisfies the 'site inspection' requirement of OAR 150-308[-1100](1)(a)(B)." *Id.* at 371. In reaching that conclusion, the court considered the site inspection requirement in light of "the detailed information provided to the assessor by taxpayer's agents and the prior collaboration between taxpayer and the assessor[.]" *Id.* at 370.

Here, Defendant provided a record of one inspection of the subject property made at some point in October 2012. The inspection was made outside of the subject property's fence. Hunter claimed that he made "several" more site inspections between January 1 and June 27, 2013. As with the alleged additional phone calls, he provided no written record of those additional inspections. The court finds that Defendant made one inspection of the subject property. The fact that the inspection occurred from outside of the subject property's fence does not disqualify it for purposes of the rule. As noted above, the court in *Boardman* found that observations made from adjacent roadways qualified as a site inspection, under the

circumstances. In this case, Defendant's inspection of the subject property was limited because Defendant was unable to connect with Plaintiff to schedule a more comprehensive inspection. The court finds Defendant's inspection is sufficient under the rule.

3.    *Whether a request was made for a recent history of the subject property's use*

Defendant argued that its June 27, 2013, letter, "Notice of Intent to Disqualify," satisfies the third requirement—a request for the recent history of the subject property's use. In response Plaintiff argued that,

> "this letter is misleading (no inspection was conducted by the county) and intimidating, indicating that the decision to disqualify the property was already made and requiring the property owner to 'present evidence as to why your property should not be removed from farm deferral status' and therefore does not meet the requirement of a 'request by the County for a recent history of the property's use as a part of the County's decision making process."

(Ptf's Mot at 8.) The court agrees with Plaintiff that Defendant's June 27, 2013, letter gives the impression that Defendant has already formed an opinion that the subject property no longer qualifies for farm use special assessment. Indeed, its states: "We were unable to observe any continuing farm activity and must now consider disqualifying these acres from farm deferred status." However, the letter does *not* state that the subject property has already been disqualified and it provides Plaintiff with an opportunity to present evidence that the subject property should not be disqualified. That language satisfies the intent of the rule by inviting Plaintiff to submit evidence of farm activity at the subject property.

4.    *Whether a record was made of a site inspection*

The recordkeeping requirement in the rule lists several items that "must" be in the record: "when the inspection was made, who made the inspection, copy of contact letter(s) or record of other means of contact, information from the person contacted, and notations of the conditions found." OAR 150-308-1100(1)(b). Defendant asserted that its "file records the steps as required

by the regulation. The date, time and person making the inspection was recorded, as were the attempts to contact the owner." (Def's Resp at 5.) The court finds that each of the required items is present in Defendant's record.[9]

Plaintiff argued that Defendant's recordkeeping was not sufficient and compares this case to *Exit 282A Development Company, LLC v. Clackamas County Assessor*, TC-MD 120764C, WL 3948638 (Jul 30, 2013). (Ptf's Mot at 4.) In *Exit 282A* – involving the same Defendant and representative, Hunter, as in this case – the county made no effort to contact the plaintiff to request the recent history of property's use. 2013 WL 3948638 at *4. The county's phone call and inspection had taken place several years prior to the tax year at issue and pertained to a valuation dispute. *Id.* The court found that the county "did a very poor job of recording its inspections when measured against the requirement in" the rule. *Id.*

In this case, Defendant's efforts to gain information regarding the subject property and its recordkeeping of those efforts are not much improved from *Exit 282A*. Defendant's inspection record lists the wrong date. It lists only one phone call to Plaintiff and one site inspection, even though Hunter testified that he and Ommert made several calls and inspections. Defendant's letter requesting the recent history of the subject property's allowed Plaintiff 30 days to respond, yet Defendant disqualified the subject property after only 27 days. On the whole, Defendant's records are scant and include both errors and omissions. Defendant's actions and records are the bare minimum necessary to satisfy the rule, but there is considerable room for improvement.

/ / /

/ / /

_____

[9] The record indicating "who made the inspection" is not entirely clear. Hunter testified that Ommert was the appraiser who made the October 2012 inspection. Defendant's record of the inspection does not include Ommert's name, but rather contains an entry "APPR#" that may serve to identify her within Defendant's system. (*See* Decl of Hunter, Ex D.) Defendant's June 27, 2013, letter to Plaintiff states that an inspection was made of the subject property and identifies both Hunter and Ommert as contacts. (Def's Ex A.)

B.    *Whether the Subject Property Qualified for EFU Special Assessment*

The second issue is whether the subject property qualified for EFU special assessment for the 2013-14 tax year.  "Any land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment under ORS 308A.050 to 308A.128, unless disqualified under other provisions of law."  ORS 308A.062(1).  "Farm use" is defined as "the current employment of land for the primary purpose of obtaining a profit in money by" one of a number of enumerated farm activities.  ORS 308A.056(1).

Defendant disqualified the subject property from special assessment based on its determination that, in 2012 and 2013, the subject property was used to manufacture chemical soil supplements and that such use did not qualify as "farm use" under ORS 308A.056(1).  (*See* Def's Arg at 1.)  Plaintiff called no witnesses to testify on its behalf and presented little written evidence pertaining to its use of the subject property for the 2013-14 tax year.  Plaintiff provided as an exhibit an undated printout from its web page listing its products, which stated:

> "Since 1974 Earth Science Products Corporation has employed a forward-looking manufacturing process that transform [*sic*] petroleum waste products into environmentally safe chemicals that significantly improves clay soil surface and subsurface conditions and produces healthy soil conditions."

(Ptf's Ex 32.)  A print out entitled "Farwest Show New Products Showcase" lists "Wood's Land Life" under the "2015 New Products Showcase Selections."  (Ptf's Ex 33.)  That product is one manufactured by Plaintiff.  (*Id.* at 2.)  An excerpt from the Oregon Department of Agriculture's "Oregon Agripedia, 2013 edition," lists fertilizers sold or distributed in Oregon between 2009 and 2012.  (Ptf's Exs 35, 36.)  It lists materials, not specific products or brands.  (*Id.*)

It is unclear to the court whether Plaintiff provided those exhibits in order to prove that the subject property was in a qualifying "farm use" for the 2013-14 tax year.  Plaintiff offered no testimony to explain the exhibits and how they pertained to activities at the subject property.  On

that limited evidence, the court is unable to make a determination whether the subject property qualified for farm use special assessment for the 2013-14 tax year.

III.  CONCLUSION

After careful consideration, the court concludes that it has jurisdiction to consider Plaintiff's 2013-14 tax year appeal under ORS 305.288(3), as determined in its May 27, 2016, Order.  The court finds that Defendant complied with the procedures required under OAR 150-308-1100(1) prior to disqualifying the subject property from special assessment for the 2013-14 tax year.  The court further finds Plaintiff failed to prove by a preponderance of the evidence that the subject property qualified for special assessment under ORS 308A.062 for the 2013-14 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of December, 2016.


ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on December 9, 2016.*